UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARD L. REYNOLDS                              CIVIL ACTION

VERSUS                                           NO. 16-6984

CHRISTINE L. VOELKEL, JACQUES F. BEZOU,          SECTION A(3)
JR., CONTINENTAL CASUALTY CO., JACQUES
F. BEZOU, JACQUES F. BEZOU, A
PROFESSIONAL CORP.

## <u>ORDER AND REASONS</u>

The following motions are before the Court:

**Motion for Summary Judgment (Rec. Doc. 75) [peremption]** filed by defendants
Jacques F. Bezou, Jr., Jacques F. Bezou, Jacques F. Bezou, APC, and Continental Casualty
Co.

**Motion for Summary Judgment (Rec. Doc. 76) [causation for damages]** filed by
defendants Jacques F. Bezou, Jr., Jacques F. Bezou, Jacques F. Bezou, APC, and Continental
Casualty Co.

**Motion for Summary Judgment (Rec. Doc. 77) [judicial estoppel/stay]** filed by
defendants Jacques F. Bezou, Jr., Jacques F. Bezou, Jacques F. Bezou, APC, and Continental
Casualty Co.

**Motion for Declaratory Relief (Rec. Doc. 80) [burden of proof]** filed by plaintiff Richard
L. Reynolds.

**Motion for Partial Summary Judgment (Rec. Doc. 84) [liability]** filed by plaintiff
Richard L. Reynolds.

**Motion for Leave to File Third Supplemental and Amending Complaint (Rec. Doc.
142)** filed by plaintiff Richard L. Reynolds.

All motions are opposed.

The motions, submitted for consideration on April 18, 2018, May 2, 2018, and July 11,

2018, are before the Court on the briefs without oral argument.

## I.     BACKGROUND

This is a legal malpractice claim brought by Richard L. Reynolds against his former attorneys, Christine L. Voelkel, Jacques F. Bezou, Jr., Jacques F. Bezou, and the Bezou Law Firm.[1] Defendant Continental Casualty Co. is Defendants' professional liability insurer. The crux of the complaint is that Defendants were negligent in allowing Reynolds' injury claims arising from a 2008 automobile crash to be dismissed on summary judgment as to certain defendants.

On March 15, 2008, Reynolds was involved in a serious automobile collision caused by an intoxicated driver. The airbags in Reynolds' Infiniti G35 did not deploy and Reynolds has always maintained that this exacerbated the injuries that he sustained in the crash. The G35 was a total loss but Reynolds (through his then-fiancée Ms. Linda Lentz) asked his insurer, ACIIE[2], to preserve the vehicle for potential litigation. ACIIE attempted to preserve the vehicle with a third-party, IAAC,[3] but the vehicle was ultimately auctioned and dismantled for parts.

Reynolds met with Bezou on March 4, 2009, a date approaching the one year anniversary of the accident. Bezou agreed to take Reynolds' case.[4] Bezou assigned the case to defendant Christine Voelkel, an attorney working for Bezou's firm at the time. Voelkel filed suit

---

[1] Jacques F. Bezou, Jr. is the son of Jacques F. Bezou. The Court will refer to these attorneys as Bezou, Jr. and Bezou, respectively.

[2] Automobile Club Inter-Insurance Exchange

[3] Insurance Auto Auctions Corp.

[4] Bezou met with Reynolds at the request of another colleague. Bezou maintains that he took the case because he felt sorry for Reynolds—an attorney—because no one else would take his case, and although disputed by Reynolds, Bezou maintains that he told Reynolds up front that his case was a long shot. The dispute as to what was said about the case at the initial meeting is not material to any issue currently before the Court but from a strictly objective point of view, the Court can discern no reason why Bezou would have been particularly optimistic regarding the potential for success with Reynolds' case. While Reynolds had significant damages and a seemingly airtight case as to liability, the underinsured tortfeasor was essentially judgment proof, and Reynolds' Infiniti G35 had already been inadvertently destroyed before any expert could examine it for purposes of a products liability claim. Bezou required, and Reynolds agreed, to pay all costs of the litigation.

("the Underlying Case") on behalf of Reynolds against the driver (Robert Bordelon), his father, ACIIE, IAAC, and Nissan North America, Inc. The claim against ACIIE and IAAC was for negligent spoliation in light of the lost G35; the claim against Nissan was a products liability claim in light of the G35's airbags that did not deploy.

The Underlying Case proceeded in the 22nd JDC, Parish of St. Tammany, as the parties conducted discovery and engaged in motion practice. In 2011, Bezou, Jr. graduated from law school and was admitted to the bar. He joined his father's firm, and Voelkel moved two doors down to start her own firm. Voelkel took the firm's physical file for Reynold's case when she moved and continued to represent Reynolds.[5]

During the course of the litigation, ACIIE and IAAC challenged the negligent spoliation claim as being a cause of action unrecognized under Louisiana law. Ultimately, the trial judge granted those defendants' exceptions.[6] The court of appeal affirmed in a published decision. *Reynolds v. Bordelon*, 154 So. 3d 570 (La. App. 1st Cir. 2014).

Likewise, Nissan challenged Reynolds' products liability claim. Through Voelkel's efforts, Reynolds successfully avoided summary judgment twice, once by relying on an affidavit from expert Claude Mount. After Nissan was able to subsequently have Mount excluded on *Daubert* grounds, Nissan filed its third motion for summary judgment contending that Reynolds could not create an issue of fact as to liability under any of the theories provided by the LPLA.[7] On August

---

[5] Bezou recalled discussing with Voelkel that she would continue to work on the case from her new location but keep Bezou informed about all developments since Reynolds was still Bezou's client. (Rec. Doc. 98-26, Bezou deposition at 166).

[6] ACIIE's and IAAC's initial efforts to gain dismissal based on the exception of no cause of action were denied by the trial court and on supervisory review. Those defendants renewed their exception after the Louisiana First Circuit Court of Appeal issued an opinion expressly rejecting negligent spoliation as a cause of action under Louisiana law.

[7] Louisiana Products Liability Act

14, 2013, the trial court held oral argument on Nissan's third motion for summary judgment. Nissan challenged and the trial court excluded many of Reynolds' exhibits on the basis of hearsay, relevance, and lack of authentication—all problems that presumably could have been avoided had Voelkel followed the governing rules of procedure. The trial court granted summary judgment in favor of Nissan by judgment dated August 23, 2013. The court of appeal affirmed in an unpublished decision. *Reynolds v. Bordelon*, No. 14-121, 2014 WL 4667570 (La. App. 1st Cir. Sept. 19, 2014) (unpublished).

The Louisiana Supreme Court granted review as to both decisions—the one regarding negligent spoliation in favor of ACIIE and IAAC and the one regarding Nissan's third motion for summary judgment. On June 30, 2015, the Supreme Court issued two separate opinions. The Court affirmed as to ACIIE and IAAC insofar as the lower courts had declined to recognize a tort for negligent spoliation of evidence. *Reynolds v. Bordelon*, 172 So. 3d 589 (La. 2015). But the court evaluated the petition to determine whether it stated *any* valid cause of action, and concluded that the petition alleged sufficient facts to support a breach of contract cause of action. *Id.* at 600. The court therefore reversed the judgment that granted the exception of no cause of action and remanded the case to the trial court for consideration of the contract claim. *Id.* The court ended with: "We offer no opinion as to the ultimate success of this cause of action or to any defense thereto."[8] *Id.*

---

[8] Reynolds characterizes this disposition by the Louisiana Supreme Court as a landmark decision recognizing a cause of action for breach of contract spoliation. This Court is persuaded that Reynolds is reading far too much into the opinion's single closing paragraph, which never mentions the word "spoliation." *Reynolds*, 172 So. 3d at 600. The most reasonable interpretation of the closing paragraph, and the one that this Court will follow, is that the petition alleged sufficient facts to avoid the peremptory exception of no cause of action based on breach of contract arising out of the promise to preserve the G35—in other words, a simple breach of contract claim.

The court affirmed as to Nissan, *Reynolds v. Bordelon*, 172 So. 3d 607 (La. 2015), thus conclusively terminating the litigation as to that defendant.

It is undisputed that Reynolds obtained and/or received copies of both Supreme Court decisions near the June 30, 2015 publication date, or at the latest some date in early July 2015.

After the Supreme Court remanded as to the breach of contract claim against ACIIE and IAAC, those defendants filed yet another motion for summary judgment.[9] At or about this time both Reynolds and the Bezou law firm lost all contact with Ms. Voelkel, who again possessed the client's physical file. The task of responding to the two motions for summary judgment fell upon Bezou, Jr. On October 26, 2015, Bezou, Jr. wrote a letter to Reynolds that stated:

> After reviewing the pleadings and facts available, we do not have a viable opposition to these motions. Although breach of contract was pled in the Petition, the facts to support the essential elements of a contractual agreement so as to give rise to liability for these two defendants beyond the now dead negligent spoliation of evidence simply do not exist. As such, we will not be opposing the two motions for summary judgment filed by ACIIE and IAA.

(Rec. Doc. 98-15, Reynolds' opposition).

On November 9, 2015, Reynolds emailed Bezou, Jr.'s paralegal, Lisa Richardson, asking for clarification. (Rec. Doc. 96-18, Reynolds' opposition). On that same date Bezou, Jr. sent a letter to Reynolds to clarify why he had determined that oppositions should not be filed. In short, Bezou, Jr. could find no legitimate basis to oppose the arguments made in the motions in light of the opinion issued by the Louisiana Supreme Court. (*Id.*). On that same day, Bezou, Jr. wrote to opposing counsel to inform them that no opposition to the pending motions for summary judgment would be filed. (Rec. Doc. 98-18).

---

[9] Exhibit 98-13 to Reynolds' opposition is a copy of a motion for summary judgment filed by ACIIE. The Court has not located a copy of IAAC's motion for summary judgment in the record. Reynolds' exhibit numbers that purport to contain a copy of IAAC's motion actually include a duplicate copy of ACIIE's memorandum in support.

The Underlying Case against Bordelon remains pending in state court.

Reynolds filed his original complaint for legal malpractice in this Court on May 25, 2016. The only defendants named were Christine Voelkel and Bezou, Jr. (Rec. Doc. 1).

Reynolds filed a first amended complaint on August 8, 2016, adding Continental Casualty Co. as Defendants' professional liability insurer. (Rec. Docs. 11 & 14).

Reynolds filed a second amended complaint on October 13, 2016, joining Bezou and Jacques F. Bezou, APC as defendants. (Rec. Docs. 17 & 19).

A jury trial had been scheduled for October 22, 2018. The Court granted the parties' consent motion to continue deadlines and the trial in light of the pending motions. (Rec. Doc. 154). If Defendants' dispositive motions are not granted, the case will move forward presumably with additional discovery and motion practice.

## II.    DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec.*

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position.[10] *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

### A. Defendants' Motion for Summary Judgment [peremption] (Rec. Doc. 75) and Plaintiff's Motion for Leave to File Third Supplemental and Amending Complaint (Rec. Doc. 142)

Defendants move for summary judgment based on peremption pursuant to La. R.S. § 9:5605. Defendants' motion is grounded on the contention that the adverse trial court rulings regarding spoliation and products liability were issued on May 21, 2013, and August 23, 2013, respectively. Defendants argue that the three-year peremptive period provided by § 9:5605 began to run with the first adverse ruling against Reynolds and in favor of ACIIE/IAAC on May 21, 2013, because Louisiana law does not recognize multiple peremptive periods for multiple alleged acts of malpractice. Three-year peremption aside, Defendants point out that Reynolds knew of the 2013 adverse trial court rulings no later than November 2013. But because Reynolds

---

[10] The Court stresses this last point because the various motions and oppositions include thousands of pages of exhibits. The Court has reviewed those exhibit pages that were either specifically referenced by the parties or of obvious relevance to the issues presented.

did not file his original complaint until May 25, 2016, Defendants argue that his claims are barred

by one-year peremption.

Section 9:5605 sets forth the time periods to file a legal malpractice action. The statute

provides in relevant part:

> No action for damages against any attorney at law . . . arising out of an engagement
> to provide legal services shall be brought unless filed in a court of competent
> jurisdiction and proper venue within one year from the date of the alleged act,
> omission, or neglect, or within one year from the date that the alleged act, omission,
> or neglect is discovered or should have been discovered; however, even as to
> actions filed within one year from the date of such discovery, in all events such
> actions shall be filed at the latest within three years from the date of the alleged act,
> omission, or neglect.
>
> . . .
>
> The one-year and three-year periods of limitation provided in Subsection A of this
> Section are peremptive periods within the meaning of Civil Code Article 3458 and,
> in accordance with Civil Code Article 3461, may not be renounced, interrupted, or
> suspended.
>
> . . .
>
> The peremptive period provided in Subsection A of this Section shall not apply in
> cases of fraud, as defined in Civil Code Article 1953.
>
> La. Rev. Stat. Ann. § 9:5605(A), (B), & (E) (West 2007).

The peremptive period begins to run when a client knows or should have known that a

lawyer's actions or inaction may cause the client to incur damages, thereby creating a cause of

action for legal malpractice. *Davis v. Conroy*, 27 So. 3d 869, 873 (La. App. 5th Cir. 2009).

Therefore the court must determine when a client "knew of the existence of facts which would

have enabled him to state a cause of action for legal malpractice." *Id.* (quoting *Dauterive v.

Landry & Watkins*, 811 So. 2d 1242, 1255 (La. App. 3d Cir. 2002)). It is also possible for a client

to have constructive knowledge of facts sufficient to place "a reasonable man on notice that

malpractice may have been committed," such that the one-year peremptive period will begin to run. *Id.*

The burden of proof with respect to peremption is the same as with prescription. *Rando v. Anco Insul., Inc.*, 16 So. 3d 1065, 1082 (La. 2009). Ordinarily, the defendant bears the burden of proof to demonstrate that a claim is prescribed or perempted. *Id.* But if peremption is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the claim is not time barred. *Id.*

At the outset, the Court rejects Defendants' contention that this action is governed by a single peremptive period that began to run in 2013. While it is correct that every instance of negligent conduct during the course of a representation will not trigger a new peremptive period, *see Coté v. Hiller*, 162 So. 3d 608 (La. App. 2d Cir. 2015), this is not necessarily true where the underlying factual bases of distinct claims differ, and where they are separated chronologically. *See Taussig v. Leithead*, 689 So. 2d 680, 683 (La. App. 3d Cir. 1997) (discussing *Bustamente v. Vezina*, 668 So. 2d 1286, La. App. 5th Cir. 1996)).

Reynolds' separate legal malpractice claims arising out of the dismissal of ACIIE and IAAC and the dismissal of Nissan are based on completely distinct acts or omissions attributable to different attorneys who were not working collaboratively on the case. The two alleged acts of malpractice occurred years apart albeit during the same representation, and they are alleged to have produced distinct harms, *i.e.*, loss of the Nissan claim and loss of the separate breach of contract claim against ACIIE/IAAC. The claims brought against Nissan and ACIIE/IAAC were based on different legal theories grounded on completely different facts. And given that the breach of contract claim against ACIIE/IAAC was remanded in tact from the Louisiana Supreme

Court in June 2015, any negligent acts related to the loss of that independent claim could not have occurred in 2013 to start the running of peremption.

In fact, the specific act of alleged malpractice relating to the breach of contract claim, *i.e.*, the failure to oppose the motions for summary judgment filed by ACIIE and IAAC, occurred on or about November 9, 2015, as evinced by the correspondence from Bezou, Jr. to Reynolds and opposing counsel. Reynolds knew at that time that Bezou, Jr. would not be filing oppositions on his behalf. Therefore, the one-year peremptive period pertaining to the lost breach of contract claim did not expire until November 9, 2016. By that time, Reynolds had already filed his original (5/25/16), first amended (8/8/16), and second amended (10/13/16) legal malpractice complaints in this litigation. Therefore, the claim for legal malpractice pertaining to the lost breach of contract claim against ACIIE/IAAC is not perempted as to any defendant. The motion for summary judgment is denied as it relates to the breach of contract claim.

The claim for legal malpractice related to the products liability claim against Nissan does not lend itself to quite as straightforward an analysis. This claim was dismissed on summary judgment on August 23, 2013, ostensibly due to evidentiary omissions by Voelkel. Regardless of when Reynolds learned of the reasons for the adverse judgment, the three-year peremptive period pertaining to the lost products liability claim expired on August 23, 2016. By that time, Reynolds had already filed his original (5/25/16) and first amended (8/8/16) legal malpractice complaints against Voelkel, Bezou, Jr., and Continental Casualty. But as to Bezou and Bezou, APC, who were not joined as defendants until October 17, 2016, the legal malpractice claim based on Nissan's dismissal is perempted by three-year peremption.

Even though the claims against Voelkel and Bezou, Jr. are not subject to three-year peremption, they might still be subject to one-year peremption, which begins to run from the date

of discovery. Nothing in the record suggests that Reynolds knew in 2013 why summary judgment had been granted in favor of Nissan. Defendants suggest that the granting of summary judgment alone was sufficient to alert Reynolds that his claim was in jeopardy. This contention misses the mark because while an adverse ruling on summary judgment certainly indicates that the claim is in jeopardy, the trigger for the running of one-year peremption is knowledge that the attorney's actions or inactions have caused the client harm. Summary judgments are granted every day and they typically do not result from an attorney's negligence.

Reynolds maintains that he never knew the real reason (Voelkel's evidentiary omissions) that the claim against Nissan was dismissed until the Louisiana Supreme Court issued its ruling on June 30, 2015. Reynolds' son, who is also an attorney, obtained a copy of the decision and Reynolds does not dispute that he read it shortly after it was issued. It is hard to imagine that Reynolds—an attorney and part-time administrative law judge—would have remained in the dark about the real reasons for the Nissan dismissal for nearly two years but there is no evidence in the record to contradict his assertion as to the discovery date. Therefore, the one-year peremptive period pertaining to the lost Nissan claim expired on June 30, 2016, which was about two months before three-year peremption occurred. Voelkel and Bezou, Jr. had already been sued in the original complaint. Therefore, the claim for legal malpractice pertaining to the lost products liability claim against Nissan is not barred by one-year peremption as to these defendants.[11] The motion for summary judgment is denied as it relates to the legal malpractice claims against Voelkel and Bezou, Jr. arising out of the Nissan products liability claim.

_____

[11] The foregoing analysis reveals that the First Amended Complaint that added Continental Casualty to the suit was filed after the one-year peremptive period on the Nissan claim expired on June 30, 2016. The Court assumes that this is not problematic so long as an attorney covered by the policy has been timely sued on the Nissan claim. Thus far, Continental Casualty has not filed a motion seeking to deny coverage for Voelkel's omissions in 2013 even though she left the Bezou firm in 2011. But given that the legal malpractice claim against Bezou and Jacques F. Bezou, APC is perempted as to the Nissan

In order to avoid peremption as to Bezou, Reynolds argues in his opposition that he should benefit from the fraud exception found in subpart E of La. R.S. § 5605. If the fraud exception in subpart E applies then the limitations periods found in § 5605 revert to prescriptive periods subject to interruption, tolling, and rules such as contra non valentem. *See Lomont v. Myer-Bennett*, 172 So. 3d 620 (La. 2015). Defendants point out in their reply that Reynolds cannot invoke the fraud exception because he did not plead fraud. Reynolds therefore moves to file a third supplemental and amending complaint so that he can allege fraud and avoid the peremptive periods set out La. R.S. § 5605.

The basis of Reynolds fraud theory is that Defendants—who are not treated individually[12] in the proposed amended pleading—committed fraud by concealing the true reasons that the claims against Nissan had been dismissed, leaving him to discover the truth on his own when he finally read the June 2015 Supreme Court opinion. Unfortunately, the issue of fraud in the proposed third supplemental and amended complaint is a red herring that does nothing to save the legal malpractice claim against Bezou and Bezou, APC for the Nissan claim.

The only attorney arguably guilty of hiding the true reasons for the dismissal in favor of Nissan is Voelkel yet she was timely sued. Reynolds contends that Bezou hid the real reasons for the dismissal as evidenced by a surreptitious recording that Reynolds made of a conversation that he had with Bezou in July 2015, after Reynolds had already received the Supreme Court

---

claim, and given that it appears at this juncture that Bezou, Jr. had nothing whatsoever to do with the Nissan dismissal, Reynolds may very well find himself pursing the legal malpractice claim pertaining to Nissan against Voelkel alone if Continental Casualty has a valid basis to deny coverage as to any malpractice committed by Voelkel.

[12] Fraud must be pleaded with particularity. Fed. R. Civ. Pro. 9(c).

opinion.[13] Even if the July 2015 conversation could be characterized as "fraud" it had nothing to

do with Reynolds' ability to timely file suit against Bezou and Bezou, APC because he had

already received the Louisiana Supreme Court opinions. The purpose of the fraud exception is to

prevent injustice where the attorney's concealment of legal malpractice prevents the client from

timely filing suit. Nothing in the record suggests that anything that Bezou did prevented Reynolds

from timely filing suit. In fact, the original complaint in this court was filed well within the one-year

and three-year peremptive periods applicable to the Nissan claim. Reynolds knew when he filed

the original complaint that Bezou was the attorney that he had hired to represent him but he did

not name him as a defendant. The legal malpractice claim against Bezou and Bezou, APC

pertaining to Nissan is perempted due to Reynolds' failure to include his own attorney in the

original complaint.[14] This failure had nothing to do with any alleged concealment on Bezou's part.

The motion for leave to file a third amending complaint is therefore denied as being futile.[15]

In sum, Defendants' motion for summary judgment based on peremption is granted in

part and denied in part. The motion is denied as to all defendants as to the claim for legal

malpractice pertaining to the lost breach of contract claim. The motion is granted as to Bezou and

Jacques F. Bezou, APC as to the claim for legal malpractice pertaining to the lost Nissan

products liability claim.

---

[13] As an aside, the Court does not agree with Reynolds' characterization of this conversation. Although it does suggest that Bezou was not following the litigation closely, it does not support Reynolds' contention that Bezou was hiding anything or engaging in fraudulent conduct.

[14] A brief excerpt from Reynolds' deposition suggests that junior versus senior might have been a typographical error that Reynolds himself did not catch when reviewing the pleadings. (Rec. Doc. 103-3, Reynolds deposition at 95).

[15] Defendants contend that under state law, amended pleadings cannot relate back to an original pleading where peremption is involved. *See Marsh Eng'r, Inc. v. Parker*, 883 So. 2d 1119, 1125 (La. App. 3rd Cir. 2004). Reynolds did not argue in favor of Rule 15(c) relation back, which some district courts have allowed even with peremption. *See, e.g., Arch Spec. Ins. Co. v. C & G Const.*, No. 12-2047, 2015 WL 5012951 (E.D. La. Aug. 18, 2015) (Duval, J.).

**B.     Plaintiff's Motion for Declaratory Relief (Rec. Doc. 80) [burden of proof]**

Reynolds moves the Court to determine the burden of proof applicable to the parties in this legal malpractice action. Reynolds argues that under Louisiana law, once he establishes an attorney client relationship and negligence, the burden of proof shifts to Defendants to prove that Reynolds could not have succeeded in the Underlying Case. Defendants, on the other hand, contend that Reynolds must still prove a causal connection between the alleged malpractice and the unfavorable outcome of the litigation, as this is an essential element of his burden of proof.

In *Jenkins v. St. Paul Fire & Marine Insurance Co.*, 422 So. 2d 1109 (La. 1982), the defendant attorneys had accepted the plaintiff's case but negligently failed to file suit before the claim prescribed. A plurality of the Louisiana Supreme Court eschewed the "case within a case" approach to legal malpractice cases.[16] Under that approach a plaintiff in a legal malpractice case had to prove not only that the attorney was negligent in handling his claim but also that the claim would have been successful but for the attorney's negligence. *Id.* at 1110. The court framed the question before it as whether the client, after proving the attorney's negligence, must also establish the validity of the underlying claim by proving that the attorney's negligence caused him damages and by further proving the amount of the damages. *Id.*

In answering that question, the court expressly noted that causation is an essential element of any tort claim. *Id.* But once the client has proved that an attorney accepted his case and failed to assert the claim timely, the client has established a prima facie case that the attorney's negligence caused him some loss since it is unlikely that the attorney would have agreed to handle a claim completely devoid of merit. *Id.* In such a situation, a rule which requires the client to prove the amount of damages by trying the "case within a case" simply imposes too

---

[16] Even the two dissenting judges, however, were in favor of abandoning the case with a case approach in legal malpractice cases.

great a standard of certainty of proof. *Id.* The court was persuaded that the more logical approach is to impose on the negligent attorney the burden of going forward with evidence that the client could not have succeeded on the original claim, and the causation and damage questions are then up to the jury to decide. *Id.* Speaking in more general terms, the court held that when the plaintiff proves that negligence on the part of his former attorney has caused the loss of the opportunity to assert a claim and thus establishes the inference of causation of damages resulting from the lost opportunity for recovery, the negligent attorney bears the burden of producing sufficient proof to overcome the plaintiff's prima facie case. *Id.*

Defendants assert that there is a drastic difference in a legal malpractice action for failure to file within a prescriptive period resulting in a client's total loss of a claim, and a legal malpractice action based on unfavorable results flowing from an attorney's professional judgment in litigation. Defendants characterize *Jenkins* as a very narrow exception to the case in a case doctrine, and suggest that courts have repeatedly limited its application to its facts. Defendants contend that the Louisiana Supreme Court essentially gutted *Jenkins* in the later decision of *MB Industries, LLC v. CNA Insurance Co.*, 74 So. 3d 1173, 1187 (La. 2011), by recognizing that the legal malpractice plaintiff must still offer evidence of causation. Defendants argue that shifting the burden to them to negate the success of Reynolds' case would relieve him of the burden of ever having to carry his burden of proof as to causation.

*MB Industries* did not gut *Jenkins.* The two decisions exist in complete harmony. The single paragraph of *MB Industries* that actually references *Jenkins* confirms that there must be a causal connection between the alleged attorney negligence and the unfavorable outcome in the underlying litigation. *MB Indust.,* 74 So. 3d at 1187. That causal connection was completely lacking in *MB Industries* where it was clear in *Jenkins* given the nature of the malpractice at issue

in that case. The First Circuit explained the distinction well in *Leonard v. Reeves*, 82 So. 3d 1250, 1259 (La. App. 1st Cir. 2012), noting that the *Jenkins* rationale does apply to every case of attorney negligence. Rather, *Jenkins* applies only in those situations like the one involved in that case—the final or complete loss of an opportunity to assert a legal claim caused by an attorney's negligent failure to comply with the applicable procedural standards or constraints. *Id.* When a case fits into the *Jenkins* framework, the plaintiff has established a prima facie case that entitles him to a presumption as to causation and damages. *Id.* The burden then shifts to the defendant to overcome the prima facie case by proving that the client could not have succeeded on the original claim.

The "unfavorable outcome" in this legal malpractice case is the total loss of Reynolds claims against Nissan, ACIIE, and IAAC on summary judgment. If Reynolds can establish causation—in other words, that attorney negligence caused the loss of his claims, *i.e.,* caused summary judgment to be granted in favor of the defendants—then the *Jenkins* burden shifting rule will apply here. This legal malpractice action does not involve the contention that a series of professional judgments made over the course of the litigation cumulatively and eventually cost Reynolds his case. Instead, this action involves two discrete acts of malpractice—failure to properly authenticate and produce evidence in opposition to a motion for summary judgment and failure to file an opposition to a motion for summary judgment—that may have directly or proximately led to Reynolds' loss of his claims on procedural grounds. If Reynolds meets his burden as to causation, then like the plaintiff in *Jenkins* he will have established that attorney negligence caused the total loss of his claims. And just as in *Jenkins*, the underlying claims might have been losers on the merits but that is the burden and the risk that the attorney defendant bears once negligence and causation—causation being the link between the negligence and the

loss of the claims—are established. This is the legal causation that *MB Industries* requires. *Jenkins* does not apply to every case of alleged attorney negligence, but the court's rejection of the "case in a case" doctrine was not so narrow as to be limited solely to the situation where an attorney lets a case prescribe before filing suit.

The valid distinction between this case and *Jenkins* that Defendants are grasping upon is that unlike *Jenkins,* the causal connection between the acts of malpractice in this case and Reynolds' loss of his claims against Nissan, ACIIE, and IAAC is not as clear cut. To be sure, as the experts point out, there is attorney negligence involved in this case, at least as to the Nissan claim. But as *MB Industries* pointed out, there must be a *causal connection* between the attorney negligence and the loss of the claim, and it is Reynolds' burden to establish this connection before the *Jenkins* burden shifting rule will apply. Specifically, this Court is not certain that Reynolds' claims would not have been dismissed on summary judgment regardless of what Voelkel or Bezou, Jr. might have done to oppose the motions. And the Court is persuaded that it is part of Reynolds' burden to negate that possibility before the *Jenkins* rule will apply. As the Court explains below in conjunction with Reynolds' motion for partial summary judgment on liability, the Court is not persuaded that Reynolds has met that burden.

For the foregoing reasons, Reynold's motion for declaratory relief on the issue of burden of proof is denied as premature.

**C.      Defendants' Motion for Summary Judgment (Rec. Doc. 76) [causation for damages]**

Defendants move for summary judgment contending that Reynolds cannot establish causation for damages, which is an essential element of his legal malpractice claim.

The Court, having clarified above what Reynolds' burden of proof will be as to causation, denies this motion without prejudice.

### E.    Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 84) [liability]

Reynolds moves for partial summary judgment on the issue of "liability," reserving for trial the issue of causation and damages. Reynolds is not clear on what he means by liability. If "liability" means that attorney negligence caused the loss of the claims against Nissan, ACIIE, and IAAC then Reynolds has not met his burden on the current record.

The Court begins its analysis with the products liability claim against Nissan. No defendant disputes that Voelkel's omissions—the failure to authenticate evidence, the failure to properly verify the expert's affidavit (Richard V. Baratta, Ph.D, P.E.), and the offering of irrelevant evidence—constituted attorney negligence. The trial court excluded much of Reynolds' opposition evidence as a result of these omissions. And of course summary judgment was granted in favor of Nissan after being twice denied. But the Court has carefully studied the Louisiana Supreme Court's opinion as to the Nissan claim, and it causes the Court to question the premise that necessarily underlies Reynolds' legal malpractice claim, *i.e.*, that summary judgment would have been denied but for Voelkel's errors. In fact, the reasoning underlying the court's opinion does not suggest that the result would have necessarily been different if the excluded evidence had been admitted.

First, Reynolds makes no attempt to analyze the actual viability of his products liability claim in terms of the four recognized categories of manufacturer liability under the LPLA. The Supreme Court's discussion of the merits of Reynolds' claims suggests that attorney malpractice had nothing to do with the loss of the claims for design defect, failure to warn, and failure to conform to an express warranty. *See Reynolds*, 172 So. 3d at 614-15. The underlying facts to

support such theories of liability under the LPLA simply were not there so Reynolds cannot establish legal causation insofar as these theories are concerned. Voelkel could not invent evidence that did not exist and Reynolds does not point to specific evidence that did exist but that Voelkel failed to have admitted.

The only other remaining LPLA theory is that the G35 was unreasonably dangerous in construction or composition *at the time that it left Nissan's control.* La. R.S. § 9:2800.54(B)(1), (C); § 9:2800.55. In order to prevail under this theory Reynolds would have had to prove that the airbags *in his vehicle* materially deviated from either Nissan's standards or the vehicle's performance standards. *Reynolds*, 172 So. 3d at 613 (citing La. R.S. § 9:2800.55). But as the court pointed out, the owner's manual for Reynolds' vehicle expressly advised that the airbag system may not inflate in certain side collisions. *Id.* The manual also explained that vehicle damage may not always be an indication of whether the impact was one that should cause the airbags to deploy. *Id.*

The Supreme Court noted that Reynolds had offered no evidence that his specific collision was one that should have caused the airbags to deploy. Given that the G35 was destroyed before any expert could examine it, the Court is at a loss to understand how Reynolds would have proved this crucial fact. Reynolds makes no attempt to explain how any of the excluded evidence would have created an issue of fact sufficient to survive summary judgment. Reynolds likewise points to no evidence that Voelkel should have offered that would have proved this element of the case.

The Supreme Court also noted that Dr. Barratta's affidavit, which was admitted, provided a conclusory statement, unaided by factual support, that the airbag should have deployed. Reynolds suggests that a competent lawyer would have understood that her expert would have

to support his opinions with factual support. But this Court has serious questions regarding Barratta's ability to provide legitimate factual support for his affidavit given that he did not have the G35 to inspect, and given that the owner's manual specifically advised that only certain collisions—not necessarily identifiable by vehicular damage—would cause the airbags to deploy. Even if the NHTSA bulletins on the Nissan G35 had been admitted, Reynolds fails to explain how those bulletins would have demonstrated or created an issue of fact that *his vehicle* was defective. Similarly, Reynolds fails to explain what the excluded pre-accident invoices would have proven or as to what issue they would have created an issue of fact. Even if those invoices could have established that the airbag system had not been altered (at least by the local Infiniti dealership that issued the invoices) when it left the manufacturer's control, they would have done nothing to dispute the very real possibility that the airbag system had been damaged in the collision itself.

Again, given that the G35 was not available for the Underlying Case, Reynolds fails to point to any other evidence that Voelkel should have submitted to create an issue of fact in response to Nissan's third motion for summary judgment. Thus, while the opinion of Reynolds' expert and the evidentiary rulings of the state courts certainly establish that attorney negligence was committed in conjunction with opposing Nissan's third motion for summary judgment, none of them suffice to prove that it was attorney negligence that caused the products liability claim against Nissan to be dismissed on summary judgment. The entire basis of Nissan's motion was that Reynolds lacked evidence to prove his claims. In light of what appear to be insurmountable problems with the Underlying Case against Nissan due to the loss of the G35, this Court has a difficult time accepting that Reynolds would have survived summary judgment regardless of what his attorneys had done.

As to the legal malpractice claim arising out of the lost breach of contract claim against ACIIE and IAAC, the Court is not persuaded that Reynolds has even established attorney negligence. Reynolds' position with respect to the breach of contract claim is that Bezou, Jr. overlooked evidence in the record that would have supported an opposition to the motions for summary judgment. This evidence comprises notes in ACIIE's file that indicates that ACIIE had notice to hold the vehicle and that IAAC's representative had orally agreed to do so. At least as to ACIIE's motion,[17] it would seem that this evidence alone would be insufficient to defeat summary judgment because ACIIE's motion was grounded primarily on the inability of Reynolds to prove pecuniary damages flowing from the failure to preserve the G35. In other words, challenging the existence of a contract to preserve the G35 does not appear to be the primary line of attack urged in the motion so even if Bezou, Jr. had offered evidence of the existence of a contract in opposition, it is not clear that summary judgment would have been avoided. The Court cannot rule out that Bezou, Jr.'s decision not to file an opposition to the ACIIE and IAAC motions for summary judgment may very well have been the valid exercise of professional judgment. Reynolds has not established negligence on the current record with respect to the breach of contract claim.

For the foregoing reasons, Reynolds' motion for partial summary judgment on liability is denied without prejudice.[18]

---

[17] Again, the Court has not been able to locate a copy of IAAC's motion in the record.

[18] Also, Reynolds cannot move for summary judgment against the defendants in the collective. This case involves distinct claims for legal malpractice. Bezou, Jr. appears to have had nothing to do with the 2013 dismissal of the Nissan claim. If Reynolds ultimately reurges this motion he must be specific as to which defendants he is moving for summary judgment against and for which claims.

**F.     Defendants' Motion for Summary Judgment (Rec. Doc. 77) [judicial estoppel/stay]**

Defendants move to stay this matter until the resolution of Reynolds' claim against the intoxicated driver concludes in state court. Defendants are concerned about the possibility for inconsistent or contradictory rulings. Defendants also raise judicial estoppel.

The motion is denied. Defendants' arguments are not persuasive.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 75) [peremption]** filed by defendants Jacques F. Bezou, Jr., Jacques F. Bezou, Jacques F. Bezou, APC, and Continental Casualty Co. is **GRANTED IN PART AND DENIED IN PART** as explained above;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 76) [causation for damages]** filed by defendants Jacques F. Bezou, Jr., Jacques F. Bezou, Jacques F. Bezou, APC, and Continental Casualty Co. is **DENIED** without prejudice;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 77) [judicial estoppel/stay] filed by defendants Jacques F. Bezou, Jr., Jacques F. Bezou, Jacques F. Bezou, APC, and Continental Casualty Co.** is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Declaratory Relief (Rec. Doc. 80) [burden of proof] filed by plaintiff Richard L. Reynolds** is **DENIED** as premature;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 84) [liability] filed by plaintiff Richard L. Reynolds** is **DENIED** without prejudice;

**IT IS FURTHER ORDERED** that the **Motion for Leave to File Third Supplemental and Amending Complaint (Rec. Doc. 142)** filed by plaintiff Richard L. Reynolds is **DENIED.**

July 23, 2018

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE